UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MARK ENGEL, an individual residing in the State of Oklahoma,** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) **Case No. CIV-23-311-G** |
| | ) ) |
| **UMB BANK, n.a., a foreign for-profit National Association, et al.,** | ) ) ) |
| **Defendants.** | ) ) |

## ORDER

Now before the Court is Plaintiff Mark Engel's Motion to Remand (Doc. No. 11). Defendants UMB Bank, n.a. ("UMB") and Tejal Bhatt have responded in opposition (Doc. No. 12). Plaintiff has replied in further support of his Motion (Doc. No. 13).

*I.   Background*

Plaintiff brings this case against UMB and its employee Defendant Bhatt alleging certain wrongful conduct relating to a time deposit account. On January 6, 2011, Plaintiff entered into an agreement known as a "Time Deposit Agreement" or "Certificate of Deposit Agreement" with UMB (the "Agreement"). *See* Pet. (Doc. No. 1-2, at 1-14) at 2; *id.* Ex. 1, at 15-17; Notice of Removal (Doc. No. 1) at 2 n.2. The Agreement provided that for a term of six years, Plaintiff's $1,000,000 deposit would carry a guaranteed interest rate of 2.65% and would then "automatically renew at maturity for a like term at a rate to be

determined by [UMB] and subject to the same terms and conditions." Pet. Ex. 1, at 16.[1] The first page of the Agreement (the "Letter Page") contained additional bargained-for terms, including one penalty-free withdrawal per month and one interest rate increase per year at the time of Plaintiff's choosing. *See* Pet. at 2-4; *id.* Ex. 1, at 15. Plaintiff contends that, regardless of the Agreement's written terms, the "intent" of the Agreement was for his account to forever enjoy an interest rate of at least 2.65% and that, as long as his deposits were held by UMB, the interest rate on his account could never go down and could only go up. *See* Pet. ¶ 25.

The Agreement automatically renewed at maturity on January 6, 2017, for another six-year term. *Id.* ¶ 12. In January 2018, Plaintiff "became aware that the payment of interest on the first year in January of 2018 was at a rate of 1.10%." *Id.* ¶ 13. Plaintiff requested that UMB increase the interest rate back to 2.65%, but UMB declined. *See id.* Plaintiff alleges that UMB ultimately agreed that it would retroactively adjust interest rate payments for 2017 and 2018 from 1.10% to 2.25% and to continue to honor the terms on the Letter Page in exchange for Plaintiff depositing an additional $1,000,000 at a 2.87% rate (the "Second Agreement"). *See id.*

Plaintiff alleges that UMB breached the Second Agreement by not adjusting the 2017 and 2018 interest rate payments and not honoring the terms of the Letter Page. *See*

---

[1] The Agreement further provides that, "[a]fter the current term or at the end of any subsequent term of deposit, [UMB] reserves the right to change the rate of interest specified above." Pet. Ex. 1, at 16.

2

*id.* ¶ 14. In December 2019, UMB informed Plaintiff that it would not honor the terms of the Letter Page, contending that those terms were no longer applicable. *See id.* ¶ 15.

Plaintiff recounts at length his various interactions with Defendant Bhatt, the downtown Oklahoma City UMB branch manager. When Plaintiff first noticed the decreased interest rate on his account in 2018, Plaintiff went to Defendant Bhatt to complain. *See id.* ¶ 25. Plaintiff complains that Defendant Bhatt asked Plaintiff for written proof of the Letter Page terms. *See id.* When Plaintiff pressed Defendant Bhatt on whether the Bank would honor the Letter Page if he was unable to produce a copy of it, Defendant Bhatt responded that "her instructions were to call [Plaintiff] and ask him for a copy of the written confirmation." *Id.* While Plaintiff continued to seek a copy of the Letter Page from UMB, "Bhatt would only continue to state that she was just supposed to keep asking him to provide his proof of the CD terms." *Id.* Plaintiff alleges that Defendant Bhatt would not reveal who "was telling her what to do" and Plaintiff "asked why he could not just go upstairs to the second floor and talk directly to whoever was handling the matter." *Id.* Eventually, after Plaintiff "explained to Ms. Bhatt very frankly how improper it appeared to him that his own bank was attempting to cheat him," Defendant Bhatt confirmed that she had a copy of the Letter Page. *Id.* "[Plaintiff] responded that he already had his copy of the letter and was just checking to see if [UMB] was going to be honest with him." *Id.*

Plaintiff then attempted to negotiate more favorable terms for his time deposits with UMB, through Defendant Bhatt. *See id.* Defendant Bhatt "refused to reveal" "the person or persons at [UMB] who w[ere] handling the matter so that [Plaintiff] could address the same directly with [Defendant Bhatt's] supervisors or persons responsible." *Id.* Defendant

3

Bhatt "promised she would tell her supervisors that their position was unacceptable to [Plaintiff] and would lead to litigation." *Id.*  Eventually, Defendant Bhatt told Plaintiff that "the Bank had decided to pay the current interest rate of 2.25% for the years 2017 and 2018 and going forward on the CD, together with honoring the two remaining terms of penalty-free withdrawals and one rate increase per year at the time choice of [Plaintiff's] choosing." *Id.*  "[Plaintiff] arranged with [Defendant Bhatt] for the deposit of an additional $1,000,000 CD on January 9, 2019." *Id.*  Plaintiff alleges that Defendant Bhatt "failed to disclose or mention in any respect" that UMB would not honor the terms of the Letter Page with respect to this deposit. *Id.*

Plaintiff, an Oklahoma resident, originally filed his claims of breach of contract against UMB, and of negligence, false representation, concealment, and deceit against both Defendants, in Oklahoma County District Court. *See id.* ¶¶ 9-16, 23.  UMB removed the case to this Court on the basis of diversity jurisdiction, citing its own non-Oklahoma citizenship and Defendant Bhatt's allegedly fraudulent joinder. *See* Notice of Removal at 3-5 (citing 28 U.S.C. §§ 1332, 1441, 1446(b)(1)).  Plaintiff then filed his Motion to Remand.

II. *Standards of Review*

A defendant may remove a case pending in state court to federal court if the case is one over "which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).  "Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." *Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d

4

1519, 1521 (10th Cir. 1991). "Removal statutes are to be strictly construed, and all doubts are to be resolved against removal." *Fajen v. Found. Res. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (citation omitted).

### A. Citizenship of the Parties

The relevant statute prescribes that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Jurisdiction under § 1332(a) requires complete diversity among the parties— i.e., the citizenship of all defendants must be different from the citizenship of all plaintiffs. *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008). The party or parties invoking diversity jurisdiction—here, Defendants—have the "burden of proving [diversity jurisdiction] by a preponderance of the evidence." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

### B. Fraudulent Joinder

The doctrine of fraudulent joinder permits a federal court evaluating diversity jurisdiction to disregard the citizenship of a nondiverse defendant against whom the plaintiff has not asserted or cannot assert a colorable claim for relief. *See Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). "To establish fraudulent joinder, the removing party must demonstrate either: 1) actual fraud in the pleading of jurisdictional facts, or 2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (alteration and internal quotation marks omitted); *see also Hernandez v. Liberty Ins. Corp.*, 73 F. Supp. 3d 1332, 1336 (W.D. Okla. 2014). Where,

5

as here, removal is premised on the second basis, the removing party must establish "[t]he non-liability of the defendant[] alleged to be fraudulently joined . . . with 'complete certainty.'" *Hernandez*, 73 F. Supp. 3d at 1336 (quoting *Smoot v. Chi., Rock Island & Pac. R.R.*, 378 F.2d 879, 882 (10th Cir. 1967)).

"This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability[.]" *Smoot*, 378 F.2d at 882 (internal quotation marks omitted). "But upon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Id.* (citation and internal quotation marks omitted). "In so doing, the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006). "A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Id.* Any uncertainty regarding the viability of the claims asserted against the nondiverse party—including "disputed questions of fact" and "ambiguities in the controlling law"—must be resolved in favor of remand. *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000) (internal quotation marks omitted); *accord Dutcher*, 733 F.3d at 988.

### III.   Discussion

In this case, the citizenship of the named parties is undisputed and does not reflect complete diversity. Both Plaintiff and Defendant Bhatt are citizens of Oklahoma for

6

purposes of § 1332(a).  *See* Pet. ¶¶ 1, 4; Notice of Removal at 5.  UMB is a citizen of Missouri.  *See* Pet. ¶ 2; Notice of Removal at 5.

UMB contends that because Plaintiff has no possibility of recovery against Defendant Bhatt, the citizenship of that nondiverse defendant should be ignored and diversity jurisdiction found to lie in this case.  *See* Notice of Removal at 6-14.  Plaintiff disputes the existence of federal jurisdiction, arguing that Defendant Bhatt is not fraudulently joined because Plaintiff has stated viable claims against Defendant Bhatt and that remand is therefore required.  *See* Pl.'s Mot. at 16-20.

Generally, under Oklahoma law, "an employer is liable for the torts of its employee occurring in the course and scope of employment, although the employee is personally immune from suit."  *Hooper ex rel. Hooper v. Clements Food Co.*, 694 P.2d 943, 944 (Okla. 1985).  Certain exceptions to this rule exist, and the rule's application depends on the type of claim that is raised.  Employees who commit intentional torts are generally not considered to be acting in the scope of their employment except where the act committed "is one which is fairly and naturally incident to the business, and is done while the servant was engaged upon the master's business and [was] done, although mistakenly or ill advisedly, with a view to further the master's interest."  *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 176 (Okla. 2008) (internal quotation marks omitted).  Further, an employee is generally not liable for negligence committed in the scope of employment unless "physical harm results" or the employee "has taken control of land or other tangible thing"—circumstances typically arising in premises liability cases.  *Tyree v. Cornman*, 453 P.3d 497, 506 (Okla. Civ. App. 2019) (internal quotation marks omitted); *see Milner v.*

7

*Eagle Materials Inc.*, No. CIV-23-423-PRW, 2024 WL 584453, at *2 (W.D. Okla. Feb. 13, 2024).

Here, the record most reasonably reflects that Defendant Bhatt's role in the dispute was that of a UMB customer service representative acting within the scope of her employment.[2] There is no evidence that Defendant Bhatt was herself a party to the Agreement, Second Agreement, or any other agreement between Plaintiff and UMB. Nor is there any evidence that Defendant Bhatt acted without authority or exceeded her authority when performing her job as branch manager.[3] Plaintiff has not alleged that Defendant Bhatt's negligence caused physical harm, and this case does not concern

---

[2] For purposes of this Order, the Court assumes without deciding that the correspondence between attorney Justin Hiersche and UMB attached to Defendants' Response (Doc. Nos. 12-2, 12-3) reflects settlement communications subject to Federal Rule of Evidence 408 and has not considered them in connection with this Order. The Court notes that Rule 408 communications may appropriately be considered in determining the Court's jurisdiction in some circumstances. *See McPhail*, 529 F.3d at 956 (holding that Rule 408 does not prohibit the use of settlement offers in determining the amount in controversy for purposes of establishing diversity jurisdiction).

[3] Plaintiff argues that Defendant Bhatt acted outside of her authority by approving a rate increase and thereby exposed herself to personal liability for fraud. *See* Pl.'s Mot. at 10-11. Merits aside, Plaintiff's argument is undermined by his own allegations in the Petition, which establish that Defendant Bhatt served as a powerless liaison between Plaintiff and her superiors during the negotiations:

> [Plaintiff] explained to Ms. Bhatt his frustration with not being able to talk directly to the decision makers involved . . . . [Plaintiff] stated that there had to be an agreement with regard to the appropriate interest payments and that Ms. Bhatt could tell her supervisors that if they resolved this issue for him in accord with the letter that he would deposit another $1,000,000 in the Bank at the newly advertised rate for CDs. Ms. Bhatt finally responded advising that the Bank had decided to pay the current rate of 2.25% for the years 2017 and 2018 and going forward . . . .

Pet. ¶ 25.

Defendant Bhatt's control of land or other tangible things. The record reflects that Defendant Bhatt was, at most, an intermediary between Plaintiff and the decisionmakers at UMB. Indeed, the Petition recounts in detail Plaintiff's frustration at Defendant Bhatt's lack of authority and at Plaintiff's inability to deal directly with the actual decisionmakers within UMB. *See* Pet. ¶ 25. Accordingly, the Court finds no reasonable basis to conclude that Plaintiff can establish a cognizable negligence or intentional tort claim against Defendant Bhatt under Oklahoma law. *See Dutcher*, 733 F.3d at 988.

## CONCLUSION

For the reasons set forth herein, the Court finds that Defendant UMB Bank, n.a.'s allegation of fraudulent joinder has been established, and the citizenship of Defendant Bhatt should be disregarded. There is complete diversity between the relevant parties, Plaintiff and UMB, and therefore subject-matter jurisdiction exists.

Plaintiff's Motion to Remand (Doc. No. 11) is DENIED.

Plaintiff's claims against Defendant Bhatt are dismissed without prejudice. Defendant Bhatt shall be terminated as a party to this action.

IT IS SO ORDERED this 20th day of September, 2024.

CHARLES B. GOODWIN
United States District Judge