**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

MARK ENGEL, an individual residing ) 
in the State of Oklahoma, )
       )
      Plaintiff, )
       )
v. )   **Case No. CIV-23-311-G**
       )
UMB BANK, n.a., a foreign for-profit ) 
National Association, )
       )
      Defendant. )

## ORDER

In this action, Plaintiff Mark Engel brings claims under Oklahoma law against Defendant UMB Bank, n.a. ("UMB"), for (1) breach of contract, (2) negligence, and (3) false representation, constructive fraud, concealment, and deceit. *See* Compl. ¶¶ 9-33 (Doc. No. 1-2); *see also* Order of Sept. 20, 2024 (Doc. No. 17).

Now before the Court is Defendant's Partial Motion to Dismiss (Doc. No. 4), seeking dismissal of Plaintiff's tort claims pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has filed a Response (Doc. No. 25) and Defendant has replied (Doc. No. 28).

     *I.     Summary of the Pleadings*

Plaintiff brings this case against UMB alleging wrongful conduct relating to a time deposit account. Plaintiff, an Oklahoma resident, originally filed his claims in Oklahoma County District Court. *See* Compl. UMB then removed the case to this Court on the basis

of diversity jurisdiction.  *See* Notice of Removal (Doc. No. 1) at 1.  In summary, Plaintiff alleges as follows:

On January 6, 2011, Plaintiff entered into an agreement with UMB known as a "Time Deposit Agreement" or "Certificate of Deposit Agreement" (the "TD Agreement").  *See* Compl. ¶ 9; TD Agreement, *id.* Ex. 1, at 16-17; Notice of Removal (Doc. No. 1) at 2 n.2.  The Agreement provided that for a term of six years, Plaintiff's $1,000,000 book entry time deposit (a "TD" or "CD") would carry a guaranteed interest rate of 2.65% and would then "automatically renew at maturity for a like term at a rate to be determined by [UMB] and subject to the same terms and conditions."  TD Agreement at 16; *see* Compl. ¶ 10.[1]

Prior to execution of the TD Agreement, Plaintiff and UMB "had negotiated special terms."  Compl. ¶ 10.  These additional negotiated terms were set forth in a Letter Proof of Terms (the "TD Letter," *id.* Ex. 1, at 15).  The TD Letter, addressed to Plaintiff and signed by Jason L. Pound, a UMB manager, states that the terms of Plaintiff's deposit are as follows:

- 2.65% guaranteed for 6 years

- 1 penalty free withdrawal per month

- 1 rate increase per year at the time . . . of your choosing (the new rate will be the base rate for the remaining amount of time on the CD).

*Id.*; Compl. ¶¶ 10-11.

---

[1] The TD Agreement further provides: "After the current term or at the end of any subsequent term of deposit, [UMB] reserves the right to change the rate of interest specified above or to call this deposit for payment."  TD Agreement at 16.

Plaintiff and Mr. Pound negotiated these specific terms, which were memorialized in writing with the intent that they serve as "permanent, ongoing terms" for the deposit account. *Id*. ¶ 11. Defendant retained the right to reject additional deposit amounts that would be governed by these terms and further reserved the "right to call the deposit altogether at the maturity date, if [Defendant] did not elect to renew the account subject to these same terms and conditions." *Id*. Plaintiff contends that the "intent" of the Agreement was that his account would forever enjoy an interest rate of at least 2.65% and that, as long as his deposits were held by UMB, the interest rate on his account could never go down and could only go up. *Id*. ¶ 25.

The 2.65% interest rate was applied on each January 6 annual payment from 2012 to 2017. *Id*. ¶ 12. The Agreement automatically renewed at maturity on January 6, 2017, for another six-year term "subject to the same terms and conditions." *Id*.

In January 2018, Plaintiff "became aware that the payment of interest on the first year in January of 2018 was at a rate of 1.10%." *Id*. ¶ 13. Plaintiff contacted the current UMB branch manager, Tejal Bhatt, seeking correction of the mistake in rate. *Id*. Ms. Bhatt indicated that she would check into the matter and asked if Plaintiff had proof of the terms of the deposit. *Id*. For "weeks" Defendant delayed taking action by stating falsely that it was unable to locate its copy of the TD Letter. *Id*. Defendant eventually produced the TD Letter. *Id*. At that time, Defendant disclaimed any obligation to pay the 2.65% interest rate insofar as the renewed CD but indicated it would comply with the other two terms in the TD Letter. *See id*.

3

The dispute and discussions continued "up to the time of" the next annual payment, which would have been in January 2019. *Id.* Plaintiff and Defendant then reached a "compromise agreement," which included the following:

- Plaintiff "conceded to give up his claim for the guaranteed 2.65% interest rate."

- Defendant "promise[d] to adjust the interest payments for 2017 and 2018" from 1.1% to 2.25%.

- Defendant "promise[d] . . . to change the interest rate on the CD to" 2.25%.

- Defendant promised to honor the other two remaining terms on the TD Letter— penalty-free withdrawals and one rate increase per year at the time of Plaintiff's choosing—going forward.

- Plaintiff promised that upon "satisfactory resolution of the issue," he would deposit an additional $1,000,000 with Defendant "at the newly advertised 2.87% interest rate for UMB CDs."

*Id.*

Plaintiff deposited the additional $1,000,000 with UMB. *Id.* UMB, however, did not pay the adjustment for the 2017 and 2018 interest rate payments, continued to pay interest at the rate of 1.1% for the remaining four years of the term of the renewed CD, and otherwise refused to honor the terms of the TD Letter for the remainder of the term of the renewed CD. *See id.* ¶ 14. In December 2019, UMB informed Plaintiff that it would not honor the terms of the TD Letter for any renewed policy periods, contending that the three listed terms applied only during the first term of the CD. *Id.* ¶ 15.

## II.    Standard of Review

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id*. at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Federal Rule of Civil Procedure 9(b) requires that in alleging fraud or mistake, a party must state the circumstances constituting fraud or mistake with particularity. *See*

5

Fed. R. Civ. P. 9(b).[2]  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where[,] and how of the alleged fraud," as well as "the time, place, and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotation marks omitted), *abrogated on other grounds by Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 587 U.S. 262 (2019). In evaluating whether a claim for fraud has been pled with particularity as required by Rule 9(b), the Court "accept[s] as true all well-pleaded facts, as distinguished from conclusory allegations, and view[s] those facts in the light most favorable to the non-moving party." *Id.* at 726.

   III.    *Defendant's Motion to Dismiss*

          A.  *Plaintiff's Negligence Claim*

     Plaintiff alleges that Defendant owed "a duty to adequately inform [Plaintiff] of [Defendant's] actions affecting [Plaintiff's] CD Account and to otherwise honor [Defendant's] duty to care for his funds properly." Compl. ¶ 16.  Plaintiff contends that Defendant breached this duty by repeatedly failing to increase the CD interest rate and by failing to exercise reasonable care to ensure that the proper interest rate was applied.  *See id.* ¶¶ 17-18.  Plaintiff alleges that Defendant had knowledge of the promised CD terms

---

[2] The Court evaluates Plaintiff's pleading under Federal Rule of Civil Procedure 9(b).  *See Jonnada v. Liberty Ins. Corp.*, No. CIV-19-456-D, 2019 WL 6119233, at *4 (W.D. Okla. Nov. 18, 2019); *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 914 (10th Cir. 2006).  Oklahoma state law also requires that claims of fraud be pled with particularity, however.  *See* Okla. Stat. tit. 12, § 2009(B).

and made negligent representations in failing to exercise ordinary care to ensure that those terms were applied, directly and proximately damaging Plaintiff.  *See id.* ¶¶ 19-22.

To recover on a negligence claim under Oklahoma law, the plaintiff must establish "(1) [the] existence of a duty on the part of the defendant to protect plaintiff from injury; (2) defendant's breach of the duty; and (3) injury to plaintiff proximately resulting therefrom." *Scott v. Archon Grp., L.P.*, 191 P.3d 1207, 1211 (Okla. 2008).  The Oklahoma Supreme Court has explained that

> [a] duty of care is an obligation owed by one person to act so as not to cause harm to another.  Whether the defendant owed the plaintiff a duty of care is a question of law for the court in a negligence action.

*Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007) (footnote and citation omitted).  "The existence of a duty is an essential element of a negligence claim; without it the claim must fail."  *Henry v. Merck & Co.*, 877 F.2d 1489, 1492 (10th Cir. 1989) (applying Oklahoma law).

Defendant argues that it owed no independent duty of care to Plaintiff that would support a negligence claim.  *See* Def.'s Mot. to Dismiss at 15-18.  Defendant asserts that, as there is no special relationship between the parties, any recovery by Plaintiff arising from Defendant's administration of the TD Agreement lies in contract, not tort.  *See id.* The Court agrees.

While past decisions of the Oklahoma Supreme Court held that "[a]ccompanying every contract is a common-law duty to perform it with care, skill, reasonable experience

7

and faithfulness," more recently that court has clarified:

> There is simply no general duty to use reasonable care in the performance of a contract. The duty of a party to a contract to act reasonably and diligently in the performance of a contract are encompassed within the implied covenant of fair dealing and good faith. "Fair dealing" in the implied covenant emphasizes "reasonable action," while "good faith" is marked by "the exercise of reasonable diligence." The duty to act in good faith also requires a party to abstain from taking unfair advantage of another. Any neglect and lack of diligence on the part of the defendants is simply proof of their breach of the implied duty to deal fairly and in good faith, and not an independent theory of recovery.

*Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1232 (Okla. 1981); *Embry v. Innovative Aftermarket Sys. L.P.*, 247 P.3d 1158, 1161 (Okla. 2010) (citations omitted); *see also Miller v. EOG Res., Inc.*, No. CIV-19-1033-G, 2020 WL 592339, at *3 (W.D. Okla. Feb. 6, 2020) (dismissing claim for negligent breach of contract as foreclosed by *Embry*).

Further, a tort claim cannot lie where there is no injury "to person or property beyond the particular matter of the contract." *Proe v. Diamond Homes*, 574 P.3d 1, 14 (Okla. Civ. App. 2025) (omission and internal quotation marks omitted). And "absent gross recklessness or wanton negligence," "Oklahoma law does not permit a bank customer to sue a bank in tort," at least in the commercial lending context. *Chapman v. Chase Manhattan Mortg. Corp.*, No. 04-CV-0859, 2007 WL 2815246, at *5 (N.D. Okla. Sept. 24, 2007) (citing *Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1225-27 (Okla. 1988)).

Even viewed in Plaintiff's favor, the allegations do not support a "common law negligence duty" owed to Plaintiff or show injury "beyond the particular matter of the contract." *Proe*, 574 P.3d at 13-14 (internal quotation marks omitted). Nor has Plaintiff pleaded conduct by Defendant rising to the level of gross recklessness or wanton

negligence.  In the absence of such allegations, the Complaint does not plausibly state an actionable negligence claim against Defendant under Oklahoma law.

### B.  Plaintiff's Claims of False Representation, Constructive Fraud, Concealment, and Deceit

Plaintiff's fraud claims are based on events that occurred after Plaintiff discovered that Defendant had not applied the 2.25% interest rate to the renewed CD, including specifically the discussions culminating in an alleged compromise agreement.  *See* Compl. at ¶¶ 23-31; *see also* Pl.'s Resp. at 11 (stating that fraud claims are based on the allegation "that Defendant promised to raise the interest rate to 2.25% from the date of renewal forward in order to induce Plaintiff to leave his personal and business accounts at the bank" "but had no intention of following through on that promise").  Specifically, Plaintiff contends that Defendant agreed to a "compromise" that included promises by Defendant to (1) adjust the 2017 and 2018 interest payments on the renewed CD to reflect an interest rate of 2.25%, (2) change the present interest rate on the renewed CD to 2.25%, and (3) honor the other two remaining terms on the TD Letter—penalty-free withdrawals and one rate increase per year at the time of Plaintiff's choosing—going forward.  *See* Compl. ¶ 13. Plaintiff further contends that as part of this compromise, he promised to—and did— deposit an additional $1 million with Defendant at the then-advertised rate of 2.87%.  *Id*. As to the renewed CD, Plaintiff contends that Defendant did not comply with its promises in the compromise.  *Id*. ¶¶ 14-15.  Further, as to the new CD, Plaintiff contends that Defendant failed to disclose: "that the Bank would ever consider this CD subject to any penalty for early withdrawal" and "that there was any question regarding [Plaintiff's]

ability to increase this CD's interest rate to current rates." *Id.* ¶ 25. Plaintiff alleges that Defendant's false representations regarding the compromise and failure to disclose material terms relating to the new CD were made in order to induce Plaintiff, and did induce Plaintiff, to maintain the funds presently on deposit with Defendant and to deposit additional funds in the form of the new CD. *See id.* at ¶¶ 26-31.

### 1. Use of Parol Evidence

Defendant argues that Plaintiff's fraud claims should be dismissed because they rely upon evidence extrinsic to the parties' written agreements—evidence which is inadmissible under the parol evidence rule. *See* Def.'s Mot. to Dismiss at 11-14.

The parol evidence rule generally provides that the execution of a written contract "supersedes all the oral negotiations or stipulations concerning its matter," such that "the intention of the parties is to be ascertained from the writing alone, if possible." Okla. Stat. tit. 15, §§ 137, 155; *see Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985). It has long been established under Oklahoma law, however, that the parol evidence rule only works to exclude evidence of negotiations and oral discussions that "vary or contradict the terms of a written contract" if "fraud, accident[,] or mistake" is not involved. *Mercury Inv. Co.*, 706 P.2d at 529 & n.11. The Oklahoma Supreme Court has explained that the rule may not "be invoked against proof of fraud in the inducement":

> A party, upon the discovery that fraud and deceit ha[ve] been practiced upon him and that he has suffered damage by reason thereof, may go into court and raise this issue, and in support thereof offer all direct and circumstantial evidence from the inception of such fraudulent designs, whether made anterior or subsequent to the execution of a written contract secured from him in furtherance of fraudulent designs, so long as he does not, with knowledge of the fraud practiced upon him, ratify and affirm such contract.

*Miller v. Troy Laundry Mach. Co.*, 62 P.2d 975, 977 (Okla. 1936) (internal quotation marks omitted).

Because "the parol evidence rule does not preclude evidence of false and fraudulent representations of fact offered to establish fraud in the inducement of the execution of a contract," Defendant has not shown that the fraud claims should be dismissed on this basis. *First Nat'l Bank in Durant v. Honey Creek Ent. Corp.*, 54 P.3d 100, 104 (Okla. 2002); *see also Dillard Grp. of Tex., Ltd. v. MER Holding Co.*, No. CIV-19-982-G, 2021 WL 4487986, at *4-5 (W.D. Okla. Sept. 30, 2021).[3]

### 2. Sufficient Distinction Between Claims

Defendant next argues that Plaintiff's fraud claims should be dismissed as not sufficiently independent from the claim for breach of contract. *See* Def.'s Mot. to Dismiss at 18-20. The Court disagrees and concludes that both theories of liability may proceed.

Under Oklahoma law, "[w]here a party sues on a theory of breach of contract, it cannot also bring a claim alleging fraud unless the tortious act is sufficiently independent of the breach of contract." *McGregor v. Nat'l Steak Processors, Inc.*, No. 11-CV-0570, 2012 WL 314059, at *3 (N.D. Okla. Feb. 1, 2012) (internal quotation marks omitted); *see also Fox v. Overton*, 534 P.2d 679, 681 (Okla. 1975). "To determine whether a fraud claim is sufficiently distinct from a breach of contract claim, the courts consider": (1) "whether

---

[3] In addition, dismissal on this basis—or on the basis that hypothetical evidence is inadmissible under Federal Rule of Evidence 408, *see* Def.'s Reply at 6-8—would be "premature" on the current record. *Roda Drilling Co. v. Zavanna, LLC*, No. 08-CV-0684, 2009 WL 1925701, at *6 (N.D. Okla. June 26, 2009).

11

the facts supporting each claim are different"; and (2) "whether the damages arising as a result of each claim are different." *Key v. Exxon Mobil Corp.*, 508 F. Supp. 3d 1072, 1086 (E.D. Okla. 2020); *accord Edwards v. Farmers Ins. Co.*, 08-CV-730, 2009 WL 4506218, at *5 (N.D. Okla. Nov. 24, 2009).

First, as to "the facts supporting each claim," Plaintiff's breach of contract claim is "based on the bank's refusal to acknowledge the second and third terms of the [TD Letter]" and on Defendant's "refus[al] to comply with [the] agreement to change the interest to 2.25% as of [the] date of renewal." *Key*, 508 F. Supp. 3d at 1086; Pl.'s Resp. at 10-11; *see* Compl. ¶¶ 9-15. Plaintiff's fraud claims, however, are based on the allegation that Defendant made false promises and failed to disclose material facts in order to induce Plaintiff to both maintain certain deposits at the bank and make a substantial new deposit. While there is some factual overlap, these are different theories that depend on different facts. Accepting the well-pleaded facts as true, the Court finds that these allegations are sufficient to plead an "independent, willful tort" in addition to a claim based in contract. *Edwards*, 2009 WL 4506218, at *5 (internal quotation marks omitted) (distinguishing a contract claim, where the defendants "could be in breach even if they acted innocently," from a fraud claim wherein the plaintiffs alleged that the defendants "knew or should have known that the [contract] was ineffective and intentionally or recklessly proceeded to make representations of non-coverage and/or to conceal benefits owed").

Second, the theories of damages for the contract and fraud claims are different. For the contract claim, Plaintiff's damages would be based on the loss suffered as a result of the terms of the TD Letter not being enforced. As to the fraud claims, Plaintiff's damages

12

would be based on the alleged subsequent promises and failures to disclose made in connection with the agreement to compromise. While a portion of the fraud damages— e.g., that relating to application of a 2.25% interest rate for the 2017 and 2018 payments for the renewed CD—would overlap with the damages for the contract claim, the theories that give rise to such damages are distinct.

Accordingly, at this early pleading stage, dismissal is not warranted on this basis.

### 3. Economic Loss Rule

Finally, Defendant argues that, because Plaintiff alleges "purely economic loss" from the breach of a contractual duty, Plaintiff's tort claims are barred by the economic loss rule. Def.'s Mot. to Dismiss at 20-22. "The economic loss rule is a court-created doctrine that bars recovery under manufacturer's product liability for purely economic injury to the product itself." *Mills v. J-M Mfg. Co.*, 567 P.3d 385, 389 (Okla. 2025). The rule's purpose "is to preserve the boundary between tort and contract by precluding recovery for purely economic losses where contract remedies exist." *Id.* at 390.

Although "[o]ther jurisdictions have extended the economic loss rule beyond the context of products liability," the Oklahoma Supreme Court "ha[s] not adopted such an expansive approach." *Id.* at 389 n.5. "Federal courts applying Oklahoma law have consistently recognized the state's restrictive approach to the economic loss rule." *Fields v. Hench's Country Liv'n Homes of Calera*, No. 23-cv-372, 2025 WL 2680605, at *2 (E.D. Okla. Sept. 18, 2025) ("Because plaintiffs do not assert a claim for manufacturers' products liability, the economic loss rule does not apply to their tort claims."); *see, e.g., Meier v. Chesapeake Operating L.L.C.*, 324 F. Supp. 3d 1207, 1217 n.6 (W.D. Okla. 2018); *cf. Okla*

*Gas & Elec. Co. v. Toshiba Int'l Corp.*, No. CIV-14-759-HE, 2016 WL 3659941, at *6 (W.D. Okla. July 1, 2026) (applying the rule to bar a negligence claim where the dispute was "centered on . . . substantially the same sort of issue as is presented in a products liability suit").[4] Defendant's request for dismissal on this basis therefore shall be denied.

CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss (Doc. No. 4) is GRANTED IN PART and DENIED IN PART. Plaintiff's claims for breach of contract and for false representation, constructive fraud, concealment, and deceit shall proceed. Plaintiff's negligence claim is DISMISSED without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 23rd day of March, 2026.

CHARLES B. GOODWIN
United States District Judge

---

[4] "On issues of state law that have not been specifically addressed by the state's highest court, our task is to predict how that state's highest court would rule." *Grubb v. DXP Enters., Inc.*, 85 F.4th 959, 966 (10th Cir. 2023).

14